**Andrew G. STEELE, Appellant–Defendant,**

v.

**The DEPARTMENT OF WORKFORCE DEVELOPMENT, and Harrison Health Care, Appellees–Plaintiffs.**

No. 93A02–0509–EX–899.

Court of Appeals of Indiana.

Sept. 1, 2006.

Gladys M. Whitfield, Indiana Legal Services, Inc., Indianapolis, IN, Attorney for Appellant.

Stephen R. Carter, Attorney General of Indiana, Frances H. Barrow, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellees.

### OPINION

GARRARD, Senior Judge.

After he was discharged by Harrison Healthcare, Inc., Steele applied for unemployment benefits. A deputy determined Steele was eligible. On appeal an administrative law judge reversed the finding having determined that Steele was discharged for refusing to obey instructions and for just cause. The Review Board affirmed without further hearing, and this appeal followed.

At the hearing before the administrative law judge, the employer appeared by Craig Kollen, Human Resources Generalist, and Mary Ward, Charge Nurse/Unit Manager. Steele appeared *pro se*.

On appeal Steele, now represented by counsel, contends that Steele failed to receive a hearing that comported with the requirements of Ind. Admin. Code tit. 646, § 3–12–3(b) and *Flick v. Review Board*, 443 N.E.2d 84, 87 (Ind.Ct.App.1982).

The regulation provides:

All hearings shall be conducted informally in order to determine the substantial rights of the parties. The parties may present evidence as the administrative law judge deems necessary for determining the substantial rights of the parties. The parties to the appeal may appear in person, by attorney, or duly authorized agent or representative, under section 12 of this rule (*646 IAC 3–12–12*) and shall have the right to examine their own witnesses, present evidence, and cross-examine witnesses of the opposing party. Any administrative law judge shall have the right to examine all witnesses and may require the parties to produce any available evidence he may deem necessary for proper determination of the case. Where either party fails to appear or where either party is not represented by an attorney or duly authorized agent, *it shall be the duty of the administrative law judge to examine the party's witnesses, and to cross-examine all witnesses of the other party, in order to ensure complete presentation of the case.* In general, rules of evidence and procedure for the trial of civil causes shall govern proceedings before an administrative law judge or the review board, but not to an extent as to obstruct or prevent a full presentation of fact or to jeopardize the rights of any interested party. No improper conduct shall be permitted during the progress of the hearing.

(Emphasis added).

In *Flick v. Review Board*, 443 N.E.2d 84, 87 (Ind.Ct.App.1982) this court held that the regulation imposes an affirmative duty upon the ALJ to see that an unrepresented claimant is afforded the opportunity to fully present his case. *See, also, Thomas v. Review Board*, 543 N.E.2d 397, 400 (Ind.Ct.App.1989).

Steele, who was employed as a certified nursing assistant (CNA), was discharged on November 8, 2004, for failing to follow procedures by not having a second person assist in transferring a patient.

Mr. Kollen testified that Steele had been given a warning for failure to follow procedures on March 10 at another facility. No document relating to that incident was offered in evidence.

Kollen said that on October 29 Steele had been given an Employee Counseling Form for failure to use a gait belt in making a transfer. The form, which was introduced in evidence, stated the problem as transferring a resident without a gait belt and assistance of another CNA when the resident was designated as a two-person transfer. Steele's written response on the form stated that he looked for but could not find the assignment sheet (which apparently told how patients were to be moved). The resolution or action taken portion of the form stated that Steele was reeducated on the importance of gait belt transfers and following CNA assignments and was encouraged to ask co-workers about residents he was not familiar with.

Kollen stated that on November 8th Steele was discharged for transferring a patient without assistance. He identified and offered in evidence the discharge notice which stated that Steele transferred a patient alone without following assignment sheet instructions and that it was his second violation of the same nature within three days.

Steele was asked if he had any objection to the two exhibits, and he said that he did. The following then occurred:

ALJ: What is your objection?

Steele: Um, my objection is, uh, on, that, on March 10th . . . .

ALJ: I don't want to hear your story. I want to know if you've got any objection to those disciplinary actions going into evidence in the case.

Steele complains that the ALJ interrupted Steele in mid-sentence and told him, "I don't want to hear your story." The ALJ's caution was not inappropriate under the circumstances, although it would have been better had he taken a moment to explain that Steele would have the opportunity later to present his side of the case.

Moments later direct examination of the witness concluded and the ALJ told Steele he could question the witness but should not make statements. The following then occurred:

Claimant: Okay, Mr. Kollen, um, the write-up that I had received, okay. Um, the first time, uh . . . .

ALJ: I will say this once more and I will not say it again, so listen. Do you have any questions to ask Mr. Kollen concerning his testimony or the exhibits? If so, ask questions. Do not testify. Do not make statements. Questions only if you have them.

Claimant: No.

Ms. Ward then testified for the employer. She witnessed what occurred and stated that Steele had placed the woman resident into a wheelchair without the assistance of a second CNA. She testified that they had all the residents' information on assignment sheets and the assignment sheet for this woman stated that she was to be lifted by two people. She further stated that these assignment sheets were kept at the nursing station, that there was a file folder that is accessible to the CNA, and the charge nurse hands them out too.

Near the commencement of the ALJ's examination of Steele, the following occurred:

Q. Okay. Now, in this case because of the woman's weight, how was she to be moved?

A. Your honor, I was trained . . . .

Q. How was she to be moved because of her weight?

A. (Inaudible) gait belt. That's what I was told.

Q. How many people were supposed to be involved in the move?

A. Sometimes one, sometimes two, you know, it depends on the resident. That's what I was told.

Q. You're not answering my questions at all and I consider that in deciding whether you're telling the truth or not. You're evading answering simple questions and I consider that in deciding whether you're telling me the truth. Believe me I do. It's called demeanor credibility . . . .

When Steele was asked what the patient's chart said about how she was to be moved, he said that he did not have her chart and had never seen it.

Despite the significance of this patient chart, or assignment sheet, the ALJ did not explore why Steele had not seen the chart, or what Steele's experience was in the availability and actual use of such assignment sheets.

At no point did the ALJ ask Steele to tell his version of what occurred.

At the conclusion of Steele's examination the ALJ did ask if there was anything else Steele wished to submit. While Steele responded, "No, your honor", the chilling

effect of the several admonitions he had received may very well have controlled that answer and his willingness to testify.

From the foregoing we are forced to conclude that the ALJ failed in his duty to see that Steele was given the opportunity to fully present his case.

Therefore, in accord with *Flick* we reverse and remand with instructions that Steele be given a new hearing consistent with the requirements of 646, § 3–12–3(b).

RILEY, J., and SHARPNACK, J., concur.